The opinion of the court was delivered by
McEnery, J.
Jules V. Oharpantier, formerly a resident of New Orleans, and doing a notarial business in said city, held notes belonging to the plaintiff for collection, and had authority to renew the notes and to re-invest the principal and interest collected for his account. Some of these notes were transferred for his individual account and use by Oharpantier to the Metropolitan Bank. Oharpantier proved faithless in the trust confided to him and fled the State. The plaintiff learning that the defendant bank held some of the notes he had placed in the.hands of Oharpantier brought, suit for the same, claiming their ownership and sequestrating them.
*628 The defendant company alleges that it acquired said notes for a valuable consideration, before maturity, in good faith. It denies that the plaintiff Sagory is the owner of the notes.
The plaintiff offered evidence as to the ownership of the notes.. The defendant offered no evidence to rebut plaintiff’s testimony or to show that Charpenter was the owner of said notes, or that he had any authority to transfer them.
Certain accounts or statements rendered to Sagory by Charpantier,. and his predecessor in the notarial business with whom Charpantierintrusted his affairs, were offered and received in evidence over the objection of the defendant.
The heading to the statements, running through several years, is i ‘ ‘ Effects in the portfolio held for account of Charles Sagory by Jules. Charpantier, New Orleans.” In these accounts the notes in controversy figure as the property of Sagory. They were offered to show continued possession of the notes in Sagory; that they were in the. hands of Bouny and his successor Charpantier, and that they had accounted to the plaintiff for them as his property. Por the purpose-of proving ownership of the notes, the evidence was directly in the-line of that proof, and was properly admitted.
The naked declaration of Sagory to Harris, a third party of owner-' ship, were properly excluded.
Sagory unequivocally stated the facts, which lead to the irresistible-conclusion that he was the owner of the notes and had never parted with title to the same; and that they were placed in the notary’s cusody only for the purpose as heretofore stated. His testimony is corroborated in all its essential features.
All the notes except two were endorsed after their maturities, extending the day of payment. One note had no indorsement of this, kind, but was transferred after it matured.
The indorsement, after the note became due, extending the time of payment, did not have the effect of reviving them and investing them with the negotiability they possessed before their original maturities had arrived. A party therefore acquiring a note after it is past due with such an indorsement takes it subject to all equities existing between the preceding parties to it. Marcel ys. Melliet, 18 An. 223.
Charpantier had no title to these notes. The defendant bank therefore acquired none, as it acquired them after their maturities.
*629 The E. G. Carter note was indorsed before the day of payment, as ■.follows: “By mutual consent the payment of this note is postponed until the 15th February, 1885. Interest on same paid in advance up to that date.”
There are several other indorsement postponing payment before the note falls due. The indorsement on the note, made before its maturity, must be considered as incorporated into it, and made a part of it, so as to make the note payable at the date fixed by the indorsement, as though this date had been originally written in the note. 1 Daniel on Negotiable Investments 151; Morris vs. Caine, 39 An. 713.
The defendant bank acquired the note before its maturity, in good faith, and is therefore protected in its title to said note.
Judgment affirmed.